Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel: (818) 347-3333

Attorneys for Plaintiff
TANNER NAVAROLI

Algeria R. Ford (SBN 289016)
E-mail: aford@bwslaw.com
CITY ATTORNEY, CITY OF SIMI VALLEY
Lisa W. Lee (SBN 186495)
E-mail: llee@bwslaw.com
Natalie F. Price (SBN 279798)
E-mail: nprice@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
CITY OF SIMI VALLEY, TYLER
WILLIAMSON and ERIC COOKE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TANNER NAVAROLI,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SIMI VALLEY, TYLER WILLIAMSON, and ERIC COOK,<br><br>Defendants. | Case No. 2:25-cv-11601-MEMF (RAOx)<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**JOINT BRIEF ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Joint Statement of Disputed & Undisputed Facts; Joint Appendix of Evidence; Decl. of Lisa W. Lee; Decl. of Tyler Williamson; Evidentiary Objections; Notice of Lodging; and [Proposed] Order]*<br><br>Date: November 5, 2026<br>Time: 10:00 am<br>Crtrm.: 8B<br><br>Trial Date: February 22, 2027 |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 5, 2026 at 10:00 a.m. in the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Defendants CITY OF SIMI VALLEY, TYLER WILLIAMSON and ERIC COOKE (collectively "Defendants") and Plaintiff TANNER NAVAROLI ("Plaintiff") will and hereby do move this Court, in accordance with Federal Rules of Civil Procedure Rule 56(d), for summary judgment.

Defendants' Motion is made upon the following grounds:

Defendants move pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all of Plaintiff's claims for relief in the Complaint, on the ground that there is no genuine dispute as to any material fact and each of the Defendants are entitled to judgment as a matter of law. In the alternative, if the Court does not grant summary judgment as to all of the claims, the Defendants move under Rule 56(g) for an order granting partial summary judgment on any claim on which they are entitled to judgment as a matter of law and an order stating any material fact that is not genuinely in dispute and treating the fact as established in the case.

This Motion will be based upon this Notice, the attached Memorandum of Points and Authorities, the Joint Appendix of Facts, the Joint Appendix of Evidence, the Declarations and Exhibits thereto, the Notice of Lodging and the papers and pleadings on file in this matter, and on such further oral or written argument as the Court may consider at or prior to the hearing on this matter.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place beginning on September 2, 2026.

Dated: September 24, 2026

LAW OFFICES OF DALE K. GALIPO

By: /s/ Cooper Alison-Mayne
Cooper Alison-Mayne
Dale K. Galipo
Attorneys for Plaintiffs
TANNER NAVAROLI

Dated: September 24, 2026

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Lisa W. Lee
Lisa W. Lee
Natalie F. Price
Attorneys for Defendant
CITY OF SIMI VALLEY

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

A. Defendants' Introduction .......... 1

B. Plaintiff's Introduction .......... 2

II. STATEMENT OF FACTS .......... 3

A. Defendants' Statement of Facts .......... 3

B. Plaintiff's Statement of Facts .......... 6

III. LEGAL STANDARD .......... 9

A. Joint Statement .......... 9

B. Plaintiff's Statement .......... 9

IV. ARGUMENT .......... 10

A. Issue 1: Whether Officer Williamson Seized Plaintiff .......... 10

1. Defendants' Argument .......... 10

2. Plaintiff's Response .......... 12

3. Defendants' Reply .......... 14

B. Issue 2: Whether Officer Williamson's Conduct Caused Plaintiff's Injury .......... 20

1. Defendants' Argument .......... 20

2. Plaintiff's Response .......... 21

3. Defendants' Reply .......... 21

C. Issue 3: Whether Officer Williamson Is Entitled to Qualified Immunity .......... 22

1. Defendants' Argument .......... 22

2. Plaintiff's Response .......... 24

(a) A Jury Could Find That Officer Williamson's Use of Deadly Force Was Unreasonable .......... 24

(b) Defendants Waived Their Qualified Immunity Defense by Failing to Adequately Develop Their Argument in Their Opening Brief .......... 26

(c) The Law Prohibiting the Use of a Patrol Vehicle as an Impact Weapon Against a Non-Threatening Person Suspected of a Minor Offense Was Clearly Established Long Before February 2025 .......................... 27

3. Defendants' Reply ........................................................ 31

D. Issue 4: Whether Plaintiff's Battery Claim Survives ............................ 34

1. Defendants' Argument ........................................................ 34

2. Plaintiff's Response ........................................................ 35

3. Defendants' Reply ........................................................ 35

E. Issue 5: Whether Plaintiff's Negligence Claim Survives ....................... 36

1. Defendants' Argument ........................................................ 36

2. Plaintiff's Response ........................................................ 36

3. Defendants' Reply ........................................................ 37

F. Issue 6: Whether Plaintiff's Bane Act Claim Survives ......................... 38

1. Defendants' Argument ........................................................ 38

2. Plaintiff's Response ........................................................ 39

3. Defendants' Reply ........................................................ 40

V. CONCLUSION ........................................................ 41

A. Defendants' Brief Conclusion ........................................................ 41

B. Plaintiff's Brief Conclusion ........................................................ 41

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*United States v. Aceves-Rosales*,
832 F.2d 1155 (9th Cir. 1987) ........ 27

*Acosta v. City & Cnty. of S.F.*,
83 F.3d 1143 (9th Cir. 1996) ........ 27, 34

*Anderson v. Creighton*,
483 U.S. 635 (1987) ........ 23

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 9

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ........ 23, 32, 33, 34

*Bearchild v. Cobban*,
947 F.3d 1130 (9th Cir. 2020) ........ 20

*Boyd v. Benton Cnty.*,
374 F.3d 773 (9th Cir. 2004) ........ 27

*Brower v. County of Inyo*,
489 U.S. 593 (1989) ........ 10, 12

*Bryan v. MacPherson*,
630 F.3d 805 (9th Cir. 2010) ........ 25

*Buckner v. Kilgore*,
36 F.3d 536 (6th Cir. 1994) ........ 25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 9

*Chaudhry v. Aragon*,
68 F.4th 1161 (9th Cir. 2023) ........ 20

*City of Escondido v. Emmons*,
139 S.Ct. 500 (2019) (per curiam) ........ 33

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) .......... 10, 14

*Deorle v. Rutherford*,
272 F.3d 1272 (9th Cir. 2001) .......... 27

*Donovan v. City of Milwaukee*,
17 F.3d 944 (7th Cir. 1994) .......... 31

*Drummond v. City of Anaheim*,
343 F.3d 1052 (9th Cir. 2003) .......... 31

*Evans v. Hightower*,
117 F.3d 1318 (11th Cir. 1997) .......... 11, 14

*Fogel v. Collins*,
531 F.3d 824 (9th Cir. 2008) .......... 23

*Fortson v. City of L.A.*,
628 F. Supp. 3d 976 (C.D. Cal. 2022) .......... 13, 39

*Garcia Martinez v. California*,
No. EDCV 20-297 JGB (KKx), 2020 WL 6083444, at *3 (C.D. Cal. June 25, 2020) .......... 40

*Garcia v. Cty. of Merced*,
639 F.3d 1206 (9th Cir. 2011) .......... 23

*Tennessee v. Garner*,
471 U.S. 1 (1985) .......... 27, 34

*Graham v. Connor*,
490 U.S. 386 (1989) .......... 24, 26

*Hayes v. Cnty. of San Diego*,
736 F.3d 1223 (9th Cir. 2013) .......... 35

*Headwaters Forest Defense v. Cty. of Humboldt*,
276 F.3d 1125 (9th Cir. 2002) .......... 23

*Hernandez v. City of Huntington Beach*
(9th Cir. 2019) 798 F. App'x 85 .......... 38

*Hopkins v. Bonvicino*,
573 F.3d 752 (9th Cir. 2009) .......... 23

*Hughes v. Rodriguez*,
31 F.4th 1211 (9th Cir. 2022) ........................................................................ 38

*Jurkowski v. City of Seattle*,
No. C15-1155 TSZ, 2017 WL 4472859 (W.D. Wash. Oct. 5, 2017) .......... 10, 20

*United States v. Lockett*,
919 F.2d 585 (9th Cir. 1990) ........................................................................ 10

*Losee v. City of Chico*,
738 F. App'x 398 (9th Cir. 2018) ................................................................... 38

*Ludwig v. Anderson*,
54 F.3d 465 (8th Cir. 1995) ........................................................................... 31

*Malley v. Briggs*,
475 U.S. 335 (1986) ....................................................................................... 23

*Marroquin v. City of L.A.*,
112 F.4th 1204 (9th Cir. 2024) ...................................................................... 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ......................................................................................... 9

*McCormack v. Town of Whitman*,
No. 10-10461-PBS, 2013 WL 1187093 (D. Mass. Mar. 20, 2013) ............ 11, 14

*Mendez v. County of Los Angeles*,
897 F.3d 1067 (9th Cir. 2018) ............................................................ 20, 21, 22

*Mullenix v. Luna*,
136 S.Ct. 305 (2015) ...................................................................................... 24

*Mulligan v. Nichols*,
No. CV1300836RGKVBKX, 2014 WL 12586245 (C.D. Cal. Jan. 2, 2014) ........................................................................................................... 36

*Nelson v. City of Davis*,
685 F.3d 867 (9th Cir. 2012) ......................................................................... 12

*S.T. ex rel. Niblett v. City of Ceres*,
327 F. Supp. 3d 1261 (E.D. Cal. 2018) ......................................................... 39

*Pearson v. Callahan*,
555 U.S. 223 (2009) ............................................................................ 22, 23, 33

*Reese v. Cty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) .......... 38, 39, 40

*Robinson v. Solano Cnty.*,
278 F.3d 1007 (9th Cir. 2002) (en banc) .......... 35

*Rodriguez v. City of Fresno*,
819 F.Supp.2d 937 (E.D. Cal. 2011) .......... 10, 14

*Sabbe v. Washington County Board of Commissioners*,
84 F.4th 807 .......... 12, 17, 20, 25

*Saetrum v. Raney*,
No. 1:13-cv-425-WBS, 2015 WL 4730293 (D. Idaho Aug. 7, 2015) .......... 29

*Saetrum v. Raney*,
No. 1:13-cv-425-WBS, 2015 WL 4730293 (D. Idaho Aug. 7, 2015),
673 F. App'x .......... 34

*Saetrum v. Vogt*,
673 F. App'x 688 (9th Cir. 2016) .......... *passim*

*Saucier v. Katz*,
533 U.S. 194 (2001) .......... 23, 33

*Scott v. Harris*,
550 U.S. 372 (2007) .......... 9

*Seidner v. de Vries*,
39 F.4th 591 (9th Cir. 2022) .......... *passim*

*Sharp v. County of Orange*,
871 F.3d 901 (9th Cir. 2017) .......... 34

*Simpson v. City of Dearborn*,
No. 18-13156, 2019 WL 6496563 (E.D. Mich. Dec. 3, 2019) .......... 11

*Soto v. Gaudett*,
862 F.3d 148 (2d Cir. 2017) .......... 10, 14

*Stamm v. Miller*,
657 F. App'x 492 (6th Cir. 2016) .......... 31

*Sullivan v. City of Buena Park*,
No. SACV2001732CJCADSX, 2022 WL 2965656 (C.D. Cal. Jan. 13, 2022) ........ 38

*Torres v. City of Madera*,
648 F.3d 1119 (9th Cir. 2011) ........ 27

*Toscano v. City of Fresno*,
No. 1:13-cv-01987-SAB, 2015 WL 4508582 (E.D. Cal. July 24, 2015) ........ 11, 14, 30

*Walker v. Davis*,
649 F.3d 502 (6th Cir. 2011) ........ 31

*Wilson v. Layne*,
526 U.S. 603 (1999) ........ 33

*Xiong v. City of Merced*,
2015 U.S. Dist. Lexis 99146 (E.D. Cal. July 29, 2015) ........ 10

**State Cases**

*Bender v. Cty. of Los Angeles*,
217 Cal.App.4th 968 (2013) ........ 39, 40

*Brummett v. Cnty. of Sacramento*,
21 Cal. 3d 880 (1978) ........ 36

*Edson v. City of Anaheim*,
63 Cal.App.4th 1269 (1998) ........ 34, 35

*Gonzales v. City of San Jose*,
No. 19-cv-08195-NC, 2020 WL 5407993 (N.D. Cal. Sept. 9, 2020) ........ 30

*Hayes v. Cnty. of San Diego*,
57 Cal. 4th 622 (2013) ........ 37

*Li v. Yellow Cab Co.*,
13 Cal. 3d 804 (1975) ........ 37

*Munoz v. City of Union City*,
120 Cal. App. 4th 1077 (2004) ........ 35

*Shoyoye v. Cty. of Los Angeles*,
203 Cal.App.4th 947 (2012) ........ 38, 40

*Thing v. La Chusa*,
48 Cal 3d 644 (1989) .......... 35

**State Statutes**

Bane Act .......... 1, 38, 39, 40

Cal. Gov't Code § 815.2(a) .......... 35, 37, 40

Cal. Gov't Code § 820(a) .......... 37

Cal. Veh. Code § 21453 .......... 22

Cal. Veh. Code § 21651 .......... 22

Govt. Code § 815.6 .......... 36

**Other Authorities**

Fed. R. Civ. P. 56(a) .......... 9

Fourth Amendment .......... *passim*

Ninth Circuit Rule 36-3(b) .......... 30

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The matter arises from a traffic collision that occurred on February 7, 2025 at approximately 7:30pm between Plaintiff Tanner Navaroli, who was 16 years old at the time, and Defendant Simi Valley Police Department ("SVPD") Officer Williamson's marked patrol vehicle in the intersection of Michael Clark Parkway and Alamo Street, in the City of Simi Valley.

Plaintiff asserts seven causes of action in his complaint, four of which remain at issue: (1) Fourth Amendment excessive force against Officer Williamson; (2) battery against Officer Williamson and the City; (3) negligence against Officer Williamson and the City; and (4) violation of the Bane Act against Officer Williamson and the City.[1]

### A. Defendants' Introduction

Defendant Officer Williamson responded to Defendant Officer Cooke's radio communication and drove his patrol vehicle southbound on Michael Clark Parkway into the intersection to clear it for officer and civilian safety. Plaintiff Tanner Navaroli was traveling northbound on Michael Clark and entered the intersection and collided with Officer Williamson's vehicle.

The undisputed facts show that Plaintiff crashed into Defendant Officer Williamson's patrol vehicle when Plaintiff swerved left after entering the intersection. Defendant Officer Williamson did not intend to seize Plaintiff, could not have anticipated that Plaintiff would swerve and crash into him, and instead collided with Plaintiff unintentionally. The collision does not constitute a seizure, battery, or threatening, intimidating, or coercive act. The Defendant Officers are also entitled to qualified immunity because there was no Fourth Amendment

[1] Plaintiff has dismissed the remaining causes of action and defendants.

violation, and even if there was, no officer in the Officer Defendants' position would have believed that his conduct violated clearly established rights, and no existing precedent placed them on notice. Furthermore, based on the undisputed facts, Plaintiff cannot prove that Defendant Officer Williamson failed to act with reasonable care, that Defendant Officer Williamson intentionally restrained him, or that Defendant Officer Williamson caused, or was a substantial factor in causing, Plaintiff's injuries or damages. Plaintiff cannot prove unreasonable force was used against him which violated his Constitutional rights nor caused his injuries.

**B. <u>Plaintiff's Introduction</u>**

Plaintiff was sixteen years old and riding his electric bike home when Officer Williamson struck him with a 6,465-pound patrol vehicle. No officer had ordered him to stop, no officer was pursuing him, and he did not know an officer was behind him until he was on the ground with his leg broken in two places.

Plaintiff had been at the Regal Plaza with other riders. He left because his mother called and told him to come home. He rode north on Michael Clark Parkway toward Alamo Street, planning to cross Alamo in the crosswalk on the west side of the intersection and continue on Michael Clark Parkway on his way home. Before he reached the intersection, he began turning to his left so that he would reach the beginning of that crosswalk.

Officer Williamson was in his patrol vehicle on Michael Clark Parkway, stopped at the red light on the north side of Alamo. Plaintiff's e-bike came into his view, and about one second later Officer Williamson drove into the intersection against the red light, without his emergency lights. Plaintiff crossed in front of him, from his left to his right, toward the crosswalk on the west side. As Plaintiff reached that crosswalk, Officer Williamson turned his vehicle to the right, into the path Plaintiff was taking, striking him with the vehicle's front push bar, throwing him 15 to 20 feet.

///

When the push bar hit him, Plaintiff was in the crosswalk to the west of the intersection, in the eastbound lanes of Alamo Street. He was no longer in the lanes of Michael Clark Parkway in which the patrol vehicle had been traveling. To reach him there, Officer Williamson had to leave his lane and turn his vehicle into the crosswalk.

Defendants Motion is based entirely on their assertion that Officer Williamson says he did not intend to hit Plaintiff. But the evidence supports the opposite conclusion, and a jury would not be required to accept Officer Williamson's self-serving testimony. *Saetrum v. Vogt*, 673 F. App'x 688, 690 (9th Cir. 2016) (whether an officer intentionally used his vehicle to stop suspect is a question of fact).

Therefore, the Motion should be denied.

## II. STATEMENT OF FACTS

### A. Defendants' Statement of Facts

This incident occurred on February 7, 2025 at approximately 7:00 p.m. at the intersection of Michael Clark (which runs north to south) and Alamo St. (which runs east to west) in the city of Simi Valley, California. (Undisputed Material Fact No. ("UMF") 1.)

On February 7, 2025, Officer Cooke responded to a call for service regarding multiple juveniles on electric motorcycles driving recklessly in the parking lot in the Regal Plaza in Simi Valley. (UMF 2.) When Officer Cooke arrived at the location, he saw multiple e-motorcycles driving recklessly, including doing wheelies. (UMF 3.) Plaintiff admits that he rode his electric motorcycle to the front Regal Plaza center to meet a friend. (UMF 4.) He admits that four people in addition to Plaintiff and his friend were riding e-motorcycles. (UMF 5.) Plaintiff admits that while he was at the Regal, he was riding at approximately 20-30 mph. (UMF 6.)

The motorcyclists then fled the area. (UMF 7.) Plaintiff admits that he saw a police officer on motorcycle arrive in the area. (UMF 8.) When Plaintiff saw the

police officer, he admits that left because he was getting a call from his mother. (UMF 9.) Plaintiff was wearing AirPods at the time the Officer arrived and when his mother called. (UMF 10.)

Plaintiff drove northbound in the parking lot at an estimated speed of 20-35 miles per hour. (UMF 11.) Plaintiff was traveling at an unsafe and high rate of speed northbound up Michael Clark Parkway, passing two cars going eastbound and westbound. (UMF 12.) Plaintiff turned left and travelled toward Michael Clark to the police station and eventually rode to the intersection of Alamo and Michael Clark. (UMF 13.)

Officer Cooke followed behind Plaintiff, but did not engage in a pursuit, as he did not have his lights and sirens on, nor was he close enough to try to conduct a traffic enforcement stop. (UMF 14.) Plaintiff did not know the officer was behind him and did not feel he was being chased. (UMF 15.)

Officer Williamson received a call on his police radio that a group of what appeared to be juveniles were causing a disturbance at Regal Plaza shopping center and that they were riding electric motorcycles. (UMF 16.) Officer Williamson's understanding at the time is that electric motorcycles could not be driven on public property. (UMF 17.) Officer Williamson was driving a marked Ford Explorer police vehicle, equipped with emergency lights and sirens at the time of the incident. (UMF 18.)

Officer Williamson was traveling southbound on Michael Clark Parkway and in a lane to go straight through the intersection of Michael Clark and Alamo, which is what he intended to do. (UMF 19.) When he approached the intersection, there as a red light. (UMF 20.) Officer Williamson stopped momentarily at the light, for at least 8 seconds, and while still stopped, activated his overhead emergency red and blue lights. (UMF 21.) While stopped, Officer Williamson checked for east and west bound traffic on Alamo, and it appeared cross-traffic was slowing down after he turned on his lights, and then he entered the intersection to clear it for officer and

civilian safety. (UMF 22.)

Officer Williamson did not see Plaintiff on the electric motorcycle until Williamson was approximately in the middle of the intersection from north to south. (UMF 23.) When Officer Williamson was in the middle of the intersection, Plaintiff was traveling northbound on Michael Clark Parkway, coming out of Regal Plaza, which would have been directly in Officer Williamson's direction. (UMF 24.) Officer Williamson estimates that Plaintiff was traveling approximately 30 mph. (UMF 25.) When Plaintiff entered the intersection, he was approximately 20-40 feet away from Officer Williamson's vehicle. (UMF 26.)

Plaintiff admits that he approached the intersection going north, that it was dark (the sun had set) and that the light for northbound traffic was red. (UMF 27.) Plaintiff intended to enter the intersection on the red light, go straight across the street, into the police station parking lot, go through the parking lot and continue on home. (UMF 28.) Plaintiff did not stop at the intersection and only slowed down, because he was rushing to get home. (UMF 29.) Plaintiff did not honk his horn before entering the intersection on the red light. (UMF 30.)

Within a couple seconds of Officer Williamson initially seeing Plaintiff, where Plaintiff was traveling northbound, Plaintiff abruptly changed direction and made a left turn in the area of the east/west marked crosswalk, heading westbound into oncoming eastbound traffic on Alamo. (UMF 31.)

When Officer Williamson saw Plaintiff make the abrupt turn, Williamson tried to avoid Plaintiff by bringing his vehicle to a stop and turning it to the right (westbound) to get out of the way. (UMF 32.)

At some point right before impact, Officer Williamson hit his brakes and was stopped at the time of impact. (UMF 33.) Although Plaintiff testified he was traveling straight at the time of the collision, video evidence shows Plaintiff made a left turn and was traveling westbound in the eastbound lane of Alamo St. (UMF 34.) Plaintiff admits he swerved when he saw the police vehicle was coming towards

him, seconds before impact. (UMF 35.)

Plaintiff's electric motorcycle collided with Officer Williamson's patrol vehicle and hit the side of the push bar on the front of the patrol vehicle. (UMF 36.) The collision occurred on the eastbound lane of Alamo to the west of the intersection. (UMF 37.)

After the collision, when police made contact with Plaintiff, Plaintiff apologized for running from the police and told officers that his leg was broken. (UMF 38.)

### B. <u>Plaintiff's Statement of Facts</u>

On the evening of February 7, 2025, a radio call reported that a group of apparent juveniles were causing a disturbance at the Regal Plaza shopping center on e-bikes. Officer Williamson had no further information about the disturbance, and no injuries were reported. (AMF 39-41.) Some riders at the plaza were doing wheelies; Plaintiff, who was 16, was not one of them. (AMF 42-43.) No officer gave any order, and Plaintiff heard no command directed at anyone. (AMF 44.) Plaintiff left because his mother had called, before any officer arrived, and told him to come home. (AMF 45.) He rode north on Michael Clark Parkway toward Alamo Street, intending to cross in the crosswalk and cut through the police station parking lot, the route he considered safest. (AMF 46.)

Officer Cooke followed Plaintiff but never activated his lights or siren, did not consider it a pursuit, never got close enough to attempt a stop, and never saw Plaintiff look back. (AMF 47-50.) Plaintiff did not know an officer was behind him and did not learn that anyone had been trying to stop him until he was on the ground. (AMF 51.) Defendants' own rebuttal expert opines that Officer "Cook was not engaged in a vehicle pursuit ... with [Plaintiff] at the moments leading into the collision." (AMF 52.)

A City surveillance camera facing the intersection recorded the rest of the incident. (AMF 53.) Officer Williamson's patrol vehicle, traveling southbound on

Michael Clark Parkway, stopped at the red light at Alamo Street. (AMF 54.) The patrol vehicle was a marked 2022 Ford Explorer with a gross vehicle weight rating of 6,465 pounds and a Setina push bumper. (AMF 55-57.)

Plaintiff's e-bike, its headlight and rear light on, came into view turning onto Michael Clark Parkway and traveling northbound toward Alamo Street. (AMF 58-59.) About one second after Plaintiff came into view, Officer Williamson began driving into the intersection against the red light, without his emergency lights activated. (AMF 60-61.)

Two inferences follow, and both must be drawn in Plaintiff's favor. First, Officer Williamson saw Plaintiff when the camera did: a rider with his headlight on, traveling on a roadway lit by overhead streetlights, who was visible to a distant camera, was visible to the officer facing him across the intersection, and the patrol vehicle moved within about a second of the e-bike's appearance. (AMF 58-60, 62.) Second, he entered the intersection to meet the e-bike, not to warn cross traffic: he began running the red before turning on his lights, and he testified that his purpose was to drive through to the Regal Plaza. (AMF 61; UMF 22.)

Before Plaintiff reached the intersection, he began turning to his left to reach the beginning of the crosswalk on the west side of the intersection, on a path leading away from the patrol vehicle's lane. He planned to turn back to his right at the crosswalk and straighten out, so that he would be heading north through the crosswalk and across Alamo Street. (AMF 66-67.)

As Plaintiff reached the crosswalk, Officer Williamson turned toward him and into his path. (AMF 73-75.) Plaintiff estimated the patrol vehicle's speed at about 30 miles per hour entering the intersection and in the high 20s at impact, faster than his own. (AMF 76-77.) Plaintiff was thrown 15 to 20 feet and landed in the eastbound left-turn lane of Alamo Street. (AMF 78-79.) The patrol vehicle came to a stop in the eastbound lanes of Alamo Street, facing oncoming traffic, and a car traveling eastbound on a green light braked to a stop short of Plaintiff and the patrol vehicle.

(AMF 80-82.)

Officer Williamson's emergency lights were not activated when he began driving into the intersection; they came on about three seconds later, while he was already in the intersection and seconds before the collision. (AMF 61, 63.) Plaintiff first saw the lights when the patrol car was already in the intersection, a couple of seconds before it came toward him. (AMF 83.) The City has no event data recorder data, crash data, in-car video, or light or siren activation records for the vehicle. (AMF 88.)

The push bar on the patrol vehicle was bent approximately 45 degrees. (AMF 85.) Plaintiff, who was wearing a helmet, sustained displaced, comminuted fractures of the right tibia and fibula requiring surgery, and a laceration of the right knee requiring sutures. (AMF 86-87.)

Department policy requires that training on Policy 307 be made available to every officer no less than annually, and requires every officer to certify in writing that he has received, read, and understood the policy. (AMF 89-90.) The policy defines a roadblock as the intentional placement of an emergency vehicle in the path of a suspect's vehicle, a tactic the Department does not approve, and blocking as a low-speed tactic in which an emergency vehicle intentionally restricts another vehicle's movement, with the goal of containment or preventing a pursuit. (AMF 91-92.) It warns that these tactics may be a use of force, including deadly force, and permits blocking only by officers trained in it and only where the need to stop the vehicle outweighs the risk of injury or death. (AMF 93-94.) Officer Cooke testified that blocking, which he described as "preventing the vehicle from continuing down . . . its path of travel," is "highly dangerous" because "[y]ou're putting yourself and your vehicle in front of the . . . path of another vehicle" and "[i]t could cause a collision." (AMF 96-97.) Defendants' rebuttal expert, responding to Plaintiff's police practices expert Bryce and setting out the POST standards for deadly force, states that he "would agree with Mr. Bryce that none of the deadly force

guidelines/principles were present in the moments leading into the collision." (AMF 98.)

## III. LEGAL STANDARD

### A. Joint Statement

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if the dispute over that fact may affect the outcome of the lawsuit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court need not consider irrelevant and unnecessary factual disputes. *Id.* A dispute is genuine if a reasonable jury could return a verdict for the non-moving party based on the evidence. *Id.* The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do so, the moving party must present evidence that either negates an essential element of the non-movants case or demonstrates the non-movant does not have evidence sufficient to support its case. *Id.* If the movant has met its burden, the non-movant must set forth specific facts showing there is a genuine issue for a trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Plaintiff's Statement

Plaintiff adds three points to the joint statement. Where intent is the primary issue, summary judgment is generally inappropriate unless every reasonable inference defeats the plaintiff's claim. *Saetrum*, 673 F. App'x at 690 (quoting *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980)). A video recording displaces the non-movant's account only where it "blatantly contradict[s]" that account "so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). And in excessive force cases, summary judgment "should be granted sparingly," because whether a use of force was reasonable "is rarely determinable as a matter of law." *Seidner v. de Vries*, 39 F.4th 591, 601 (9th Cir. 2022) (quoting

*Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc), and *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994)).

## IV. ARGUMENT

### A. Issue 1: Whether Officer Williamson Seized Plaintiff

#### 1. Defendants' Argument

A Fourth Amendment seizure only occurs when the individual against whom the force was applied was the "object of [the] detention or taking." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). Accidental or unintended seizures do not fall under the Fourth Amendment. *See id*. at 596; see, e.g., *United States v. Lockett*, 919 F.2d 585, 590 n.4 (9th Cir. 1990).

The person seized has to be the deliberate object of the exertion of force intended to terminate the freedom of movement. *Rodriguez v. City of Fresno*, 819 F.Supp.2d 937, 946 (E.D. Cal. 2011); *see also Xiong v. City of Merced,* 2015 U.S. Dist. Lexis 99146 (E.D. Cal. July 29, 2015).

There is no 4th Amendment seizure where an officer does not use the vehicle as a force option. *County of Sacramento v. Lewis*, 523 U.S. 833, 836-37, 843-44, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (holding that there was no seizure where officer pursued motorcyclist and passenger in police car, motorcycle tipped over as motorcyclist tried a sharp left turn, and officer slammed on brakes and then hit passenger; indicating that officer "accidentally stopped the suspect by crashing into him.") The Supreme Court has made clear that no seizure occurs, despite a display of authority by a pursuing police vehicle (with siren blaring and lights flashing), if the reason the suspect stops is his or her own loss of control and subsequent crash. *Jurkowski v. City of Seattle*, No. C15-1155 TSZ, 2017 WL 4472859, at *8 (W.D. Wash. Oct. 5, 2017).

Under fact scenarios wherein an officer contends that he intended to stop the suspect but did not intend to stop the suspect by hitting him or running him over, courts have found no Fourth Amendment seizure. *See, e.g.*, *Soto v. Gaudett*, 862

F.3d 148, 161 (2d Cir. 2017) (in a case involving a car chase and then a foot chase by the police, ending with the plaintiff on foot being hit by a police car and then being tased after running away, agreeing with the district court that there was a dispute of fact "as to whether or not [the officer driving the car] hit [the plaintiff] intentionally"); *Evans v. Hightower*, 117 F.3d 1318, 1321 (11th Cir. 1997) (stating that plaintiff "failed to offer any evidence that the act of running him over with a patrol car was intended as a means to seize him"); *Simpson v. City of Dearborn*, No. 18-13156, 2019 WL 6496563, at *6, 2019 U.S. Dist. LEXIS 207724, at *14-17 (E.D. Mich. Dec. 3, 2019) (discussing several district court cases where an officer was trying to cut the plaintiff off, was trying to corral the plaintiff with the police car, or chased the plaintiff with the police car, but then accidentally hit the plaintiff); *Toscano v. City of Fresno*, No. 1:13-cv-01987-SAB, 2015 WL 4508582, at *4, 2015 U.S. Dist. LEXIS 97018, at *11-12 (E.D. Cal. July 24, 2015) (in a case where a police officer pursued an individual – the officer in his car and the individual on a bicycle – and ran over the individual, killing him, stating that there was a dispute of fact as to whether the officer intentionally bumped the bicycle or whether the officer accidentally hit the bicycle as it was falling over); *McCormack v. Town of Whitman*, No. 10-10461-PBS, 2013 WL 1187093, at *7, 2013 U.S. Dist. LEXIS 38637, at *23-24 (D. Mass. Mar. 20, 2013) (in a case where officer acknowledged using the police car to " 'head off' " the plaintiff "in order to prevent him from evading arrest," concluding there was "a dispute of fact as to whether Officer Leavitt intentionally swerved into Plaintiff in order to prevent him from running or whether the collision was accidental").

Here, the undisputed facts show that Plaintiff crashed into the officer's police vehicle when he tried to make a sharp left turn. (UMF 31-37.) Officer Williamson did not intend to seize Plaintiff, could not have known that Plaintiff would crash into him, and instead collided with Plaintiff unintentionally when Plaintiff crashed into Officer Williamson's police vehicle. (UMF 22-37.) Therefore, the collision did not

constitute a seizure under the Fourth Amendment.

**2. Plaintiff's Response**

A reasonable jury could find that Officer Williamson seized Plaintiff by intentionally striking him with his vehicle.

A seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989). The relevant intent is the intent to apply the means, not a desire to injure: "[f]or an act to be unintentional, the governmental conduct must lack the element of volition; an absence of concern regarding the ultimate recipient of the government's use of force does not negate volition." *Nelson v. City of Davis*, 685 F.3d 867, 876 (9th Cir. 2012). *See also Marroquin v. City of L.A.*, 112 F.4th 1204, 1214 (9th Cir. 2024) (explaining that an excessive force claim does not require an intent to harm, because "[t]he intentionality requirement . . . is satisfied when the termination of freedom of movement [occurs] through means intentionally applied" (quoting *Nelson*, 685 F.3d at 876)).

In *Seidner*, an officer pulled his patrol car across the path of a bicyclist fleeing a minor traffic violation, and the Ninth Circuit held that the officer's "use of his patrol car to stop Seidner from fleeing was a seizure." 39 F.4th at 596. In *Sabbe v. Washington County Board of Commissioners*, officers who used an armored vehicle to collide with a suspect's truck "seized Sabbe" because they "applied physical force with the intent to restrain his liberty." 84 F.4th 807, 820 (9th Cir. 2023). In *Brower*, the Supreme Court explained that had the police vehicle "pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure." 489 U.S. at 597.

Defendants point to Officer Williamson's statement that he did not intentionally hit Plaintiff. But the video and Plaintiff's testimony create a genuine dispute of fact on this issue. The video shows him stopped at a red, then driving into the intersection against the red as soon as Plaintiff comes into view. (AMF 54, 58,

60-61.) Plaintiff began turning to his left before the intersection to reach the crosswalk on the west side, away from the patrol vehicle's lane, planning to turn back to his right there and ride north through the crosswalk across Alamo Street; Officer Cooke, watching from behind, testified that Plaintiff began that movement before the crosswalk. (AMF 66.) Officer Williamson admits that Plaintiff was then crossing in front of him from his left to his right, that he was coasting and that he "didn't deem it ... necessary to brake," and that he turned his vehicle to the right; he cannot recall considering a turn to the left. (AMF 68-72.) That turn took the patrol vehicle into the crosswalk where Plaintiff was, and its front push bar struck the e-bike. (AMF 71, 79.) Plaintiff was thrown 15 to 20 feet. (AMF 78.) A driver trying to avoid a rider crossing from left to right brakes or turns left. Officer Williamson turned right, into the rider and into the oncoming lanes of Alamo Street. (AMF 71, 80.) Had he not turned right, there would have been no collision.

These facts are more than enough to support the inference that he intentionally struck Plaintiff. That is the inference the Ninth Circuit found sufficient in *Saetrum*. Affirming the denial of summary judgment, the court held: "There is evidence in the record the patrol car accelerated, turned toward Saetrum and then hit him. This evidence is sufficient for a reasonable jury to infer the contact was intentional." 673 F. App'x at 690 (citing *United States v. Ross*, 626 F.2d 77, 79 (9th Cir. 1980)).

Officer Williamson's statement that he did not intend to strike Plaintiff does not make his intent an undisputed fact. The officer in *Saetrum* denied intending the contact, as Officer Williamson does, and the Ninth Circuit held that "[a] jury would not be required to credit [his] testimony to the contrary." 673 F. App'x at 690. *See also Fortson v. City of L.A.*, 628 F. Supp. 3d 976, 988-89 (C.D. Cal. 2022) (rejecting argument that officers who struck a protester with a patrol car did not seize her because they "did not intend to hit her," and holding that "although the Officer Defendants contend that they did not intend to hit Plaintiff, a reasonable jury could

conclude otherwise," where "multiple people were still in the intersection when Officer Illsley accelerated into it"). Officer Williamson's credibility is a question for the jury.

Defendants' authorities do not hold otherwise. Defendants say courts find no seizure "[u]nder fact scenarios wherein an officer contends that he intended to stop the suspect but did not intend to stop the suspect by hitting him," citing *Soto v. Gaudett*, 862 F.3d 148 (2d Cir. 2017), *Toscano v. City of Fresno*, No. 1:13-cv-01987-SAB, 2015 WL 4508582 (E.D. Cal. July 24, 2015), and *McCormack v. Town of Whitman*, No. 10-10461-PBS, 2013 WL 1187093 (D. Mass. Mar. 20, 2013). But in each of those cases the district court denied summary judgment because the evidence created a genuine dispute whether the officer struck the plaintiff intentionally, and in *Soto* the Second Circuit left that ruling in place. *See Soto*, 862 F.3d at 161-62 (dismissing for lack of appellate jurisdiction the appeal from the ruling that "there was a genuine issue of fact to be tried as to whether or not [the officer] hit Soto intentionally"); *Toscano*, 2015 WL 4508582, at *4-*5; *McCormack*, 2013 WL 1187093, at *7. Similarly, Defendants' reliance on *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), is inapposite, because the parties agreed that the collision was accidental. *Id.* at 843-44. *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937 (E.D. Cal. 2011), and *Evans v. Hightower*, 117 F.3d 1318 (11th Cir. 1997), do not help Defendants, because those opinions turned on the absence of any evidence of intent; here intent is readily inferred from Officer Williamson's actions.

Summary judgment on this ground should be denied.

**3. Defendants' Reply**

Plaintiff fails to create any genuine dispute as to any material fact that no seizure occurred and, therefore, no Fourth Amendment violation occurred. Instead, Plaintiff's opposition argues that an inference can be made that Officer Williamson intentionally struck Plaintiff and that the caselaw supports this conclusion. However, in arguing an inference of intent can be made, Plaintiff focuses on a select set of

facts, ignoring the material facts leading up to the collision which show this was an unfortunate and unintentional, unanticipated accident. Furthermore, Plaintiff fails to address the obvious distinguishing facts from the cases cited in the opposition (*Seidner, Sabbe)* to the present case.

In the opposition, Plaintiff overlooks and avoids analysis of Plaintiff's reckless and illegal entrance into the intersection on a red light, at a high speed, and sudden change of direction from traveling north to suddenly crossing to the west, across Officer Williamson's path of travel (UMF 19-32) – all of which support that the collision was not intended by Officer Williamson but was the result of Officer Williamson reacting to Plaintiff and attempting to avoid collision. These facts do not amount to a seizure by law. Plaintiff directs the Court to focus only on the Officer entering the intersection on a red (which he is entitled to do), Plaintiff's westbound turn to into oncoming traffic (which Plaintiff admits he did but argues that he did not intend), the Officer's turn (which occurred as Plaintiff turns), and the collision. (UMF 22, 31, 32.) Notably, Officer Williamson entered the intersection first and was approximately halfway through the intersection before Plaintiff entered the intersection. (UMF 24, 32.)

Although these facts alone are consistent with Officer Williamson's testimony that he did not intend to collide with Plaintiff, and do not support an inference that Officer Williamson intended to collide with Plaintiff, the additional undisputed facts support the only reasonable inference is that the collision was unintentional.

The undisputed facts that Plaintiff overlooks and ignores are that he was traveling 20-35 mph north on Michael Clark (UMF 11), into the intersection on a red light without stopping (UMF 29). These facts support that Plaintiff's erratic, sudden turn, at a high speed, immediately before the collision, was unanticipated by Officer Williamson and that Officer Williamson reacted to Plaintiff's unanticipated turn and tried to avoid the collision. For example, Plaintiff claims that at the intersection, he began turning to the left to reach the crosswalk and then planned to

turn back to his right to go across the crosswalk heading north. (AMF 66.) Plaintiff argues the evidence supports the fact that his intention was to go straight northbound across the intersection. Assuming this to be true, the only reasonable inference is that Officer Williamson also believed Plaintiff intended to head northbound, and therefore Williamson, in an effort to avoid a collision, turned westbound. If Williamson intended to use his vehicle to strike Plaintiff, he would not have turned right to go westbound, as he could not anticipate that Plaintiff would turn westbound.

Additional undisputed facts that no officers were pursuing or attempting to stop Plaintiff before the collision (UMF 14, 22) also fall squarely into the inference (and Officer Williamson's testimony) that Officer Williamson did not intend to pursue or stop Plaintiff, much less collide or seize him. Additionally, it is undisputed that Officer Williamson entered the intersection (after checking for cross traffic) to drive toward Regal Plaza in response to a radio call and secure the intersection (UMF 16, 19) – not with the intent to locate and seize Plaintiff.

Plaintiff also improperly argues that certain assumptions or inferences are facts. Plaintiff assumes without evidence that once Plaintiff becomes visible in the *video* footage, that Officer Williamson must have seen Plaintiff. This should be disregarded by the Court since there is no support for this statement. What the video depicts is from the video's perspective, and not what the officer actually saw. Additionally, Plaintiff determines that it can be inferred (without supporting evidence) that Officer Williamson entered the intersection to meet Plaintiff, not to warn cross traffic. This should also be disregarded since there is no evidence Officer Williamson knew Plaintiff would exit the parking lot at that intersection or to dispute that Officer Williamson entered the intersection in response to a radio call relating to Regal Plaza and to clear the intersection. (16-17, 22.) The is no evidence to support the fact that Officer Williamson knew Plaintiff would travel in the intersection.

If all of the material facts are evaluated, the caselaw relied upon by Plaintiff is either inapplicable or easily distinguishable. Plaintiff argues the facts of this case are sufficient for an inference of an intent based on *Saetrum* (673 F. App'x at 690 (citing *United States v. Ross*, 626 F.2d 77, 79 (9th Cir. 1980). In *Saetrum*, law enforcement intended to arrest Saetrum for dealing marijuana. During the arrest, the defendant accelerated his vehicle, turned toward Saetrum, and drove the patrol car into Saetrum. In the instant case, there is no evidence that Officer Williamson intended to arrest or even pursue Plaintiff nor is there evidence that he accelerated towards him. Instead, Plaintiff sped through the intersection on a red light, made a sudden turn in Officer Williamson's path of travel, and they collided when Officer Williamson tried to avoid Plaintiff. Additionally, Officer Williamson was not in the intersection to arrest Plaintiff, he was responding to a radio call and driving toward the incident location to assist. (UMF 17, 22). These additional undisputed facts ignored by Plaintiff are critical to the analysis and establish the lack of intent on Officer Williamson's part.

The other cases referenced by Plaintiff in opposition are also inapplicable:

*Seidner v. De Vries,* 39 F.4th 591: After a police officer stopped his car to speak with the Plaintiff and confirm a minor offense, the plaintiff fled and continued riding his bicycle. The police officer then got back in his patrol car, went ahead of plaintiff, and used his vehicle as a roadblock to stop the plaintiff. Here, it is undisputed that Officer Williamson did not encounter Plaintiff before the collision, did not pursue him, and did not position his car in a fashion to be used as a roadblock. (UMF 16-37). Therefore, the facts of the instant case are easily distinguishable from *Seidner*, where the officer actively pursued the suspect and tried to stop him.

*Sabbe v. Washington County Board of Commissioners,* 84 F.4th 807: In *Sabbe*, approximately thirty law enforcement responded to a call of a drunk driver "making a mess" of his property driving his pickup truck on the property. Two armored

vehicles entered Sabbe's property and then "twice executed a PIT maneuver, intentionally colliding with Sabbe's pickup" to stop the truck. *Sabbe* is on its face distinguishable since it was not disputed that the officers intended to execute a PIT maneuver to stop the pickup truck. In the present case, no such facts exist to support any conclusion or inference that Officer Williamson positioned his vehicle in a PIT or other police maneuver with the intent to collide with Plaintiff to stop him.

Plaintiff's opposition provides no evidence to support his argument that this collision was intended and therefore a seizure. Instead, Plaintiff attempts to defeat summary judgment by lodging disputes to facts which are not material. For example, Plaintiff disputes that Officer Williamson was stopped at the intersection light for at least 8 seconds, instead claiming that he was stopped for only 6 seconds, and further disputes that Officer Williamson activated his emergency lights while stopped, instead claiming that the lights were activated when Officer Williamson was entering the intersection. (Opposition to UMF 21.) Plaintiff's dispute is not material. Whether Officer Williamson stopped at the intersection for 8 or 6 seconds, or whether Williamson activated his lights before or while he entered the intersection are not material facts. These facts do not make it more or less likely that he intended to use his vehicle to detain Plaintiff, nor more or less likely that any alleged force was unreasonable.

Similarly, Plaintiff also disputes that Officer Williamson did not see Plaintiff until Williamson was in the intersection, arguing that video evidence from a surveillance camera shows Plaintiff approaching the intersection and Williamson entering the intersection "one second later." (Opposition to UMF 23.) However, Plaintiff has failed to show that the point of the view of the surveillance camera from a different perspective is what Officer Williamson actually saw, as it is undisputed that Williamson was focused on east and west bound traffic on Alamo when he was stopped at the intersection. (UMF 22.) Also, Plaintiff's cited evidence admits that Plaintiff's motorcycle came into the surveillance camera's view one

second before Officer Williamson entered the intersection, and therefore even if Willamson saw Plaintiff one second before, Plaintiff has failed to show how this evidence is a material fact. Whether Officer Williamson saw Plaintiff's e-motorcycle one second before he entered or while he was in the intersection is not material. It is undisputed that Officer Williamson intended to enter the intersection. (UMF 22.) His intention to enter the intersection does not make it more or less likely that he intended to use his vehicle to detain Plaintiff, nor more or less likely that any alleged force was unreasonable. Similarly, Plaintiff disputes that Officer Williamson entered the intersection with the intent to clear to it, arguing Williamson's additional testimony states that it was his intent to drive straight through the intersection. (Opposition to UMF 22.) Whether Williamson entered the intersection to "clear it" and drive across it, is not a material fact. It does not make it more or less likely that he intended to use his vehicle to detain Plaintiff, nor more or less likely that any alleged force was unreasonable. It is undisputed that intended to drive through the intersection. (UMF 22.)

Also, Plaintiff attempts to defeat summary judgment by disputing that he was traveling 30-35 mph after he left the Regal Plaza, but claiming that he was only traveling in the 20s mph. (Opposition to UMF 11, 25) However, whether Plaintiff was traveling at a speed in the 20s mph or over 20mph does not make it more or less likely that Williamson intended to use his vehicle to detain Plaintiff, nor more or less likely that any alleged force was unreasonable.

Finally, Plaintiff's dispute that Williamson did not hit his brakes one second before the collision but instead simultaneous to the collision is also not a material fact, as the difference of one second or less does not make it more or less likely that Williamson intended to use his vehicle to seize Plaintiff or that any alleged force was unreasonable.

It is undisputed that his car did come to a stop after the collision. (UMF 33.)

And Plaintiff does not dispute that an unintended or accidental seizure is not a

Fourth Amendment violation or seizure. The undisputed material facts support a ruling that there is no seizure, no force, and certainly not excessive force, and therefore no Fourth Amendment violation.

### B. <u>Issue 2: Whether Officer Williamson's Conduct Caused Plaintiff's Injury</u>

#### 1. Defendants' Argument

"In a § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008)). "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Id*. A defendant's conduct is an "actual cause," or "cause-in-fact," of a plaintiff's injury only if the injury would not have occurred but for that conduct. *Chaudhry v. Aragon*, 68 F.4th 1161, 1170 n.11 (9th Cir. 2023). "'Proximate cause is often explicated in terms of foreseeability,' such that the proximate cause requirement 'preclude[s] liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.'" *Id.* (quoting *Paroline v. United States*, 572 U.S. 434, 445 (2014).)

There is no Fourth Amendment seizure if the injury or seizure was not a consequence of the officer's actions. *Sabbe v. Washington County Board of Commissioners*, 84 F.4th 807 (9th Cir. 2023); *Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018); *see also Jurkowski v. City of Seattle*, No. C15-1155 TSZ, 2017 WL 4472859, at *11 (W.D. Wash. Oct. 5, 2017).

In this case, when Officer Williamson entered the intersection to clear it for officer and suspect safety, it was not reasonably foreseeable that Plaintiff would enter the intersection, head directly in Officer Williamson's direction head-on, and then crash into Officer Williamson's police vehicle. (UMF 22-37.) Officer Williamson did not see Plaintiff's motorcycle until he was already in the

intersection, a few seconds before the crash. (UMF 23-26, 31.) Therefore, Officer Williamson could not have known that Plaintiff would crash into him when Officer Williamson drove the vehicle into the intersection. (UMF 19-37.)

Further, Plaintiff's injuries were not caused by Officer Williamson, as video evidence clearly shows Plaintiff's motorcycle traveling at a fast rate of speed heading into the intersection, then suddenly turn left and strike Officer Williamson's vehicle. (UMF 23-35.) Therefore, Plaintiff's injuries were caused by his own actions, and not by any action or force by Officer Williamson.

**2. Plaintiff's Response**

Defendants' causation argument restates their seizure argument, and fails for the same reasons. The mechanism of injury is undisputed: the push bar of a moving patrol vehicle struck Plaintiff and his e-bike and threw him 15 to 20 feet. (AMF 71, 78, 85.) If the vehicle was turned into Plaintiff's path, the collision was its direct consequence, not a "mere fortuity," as Defendants describe it. Plaintiff's swerve does not break the chain. "Under basic tort principles, something is a superseding cause only if it is 'a later cause of independent origin that was not foreseeable.'" *Mendez v. Cnty. of L.A.*, 897 F.3d 1067, 1081 (9th Cir. 2018) (quoting *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996)). "A victim's behavior is not a superseding cause where the tortfeasor's actions are unlawful precisely because the victim foreseeably and innocently might act that way." *Id.* Plaintiff's swerve was neither independent of Officer Williamson's conduct nor unforeseeable. Plaintiff veered away from the patrol vehicle "when he was coming at me, to avoid getting hit." He did not lose his balance and remained in control of the e-bike. (AMF 74, 84.) An attempt to get out of the way of an oncoming patrol vehicle is caused by that vehicle, and it is exactly what an officer should expect when he turns a patrol vehicle toward a rider.

**3. Defendants' Reply**

Plaintiff's opposition is premised and reliant upon his argument that Officer

Williamson intentionally hit him, for which he has failed to provide any evidence. Also, Plaintiff's fails to create a dispute of material fact or establish that Plaintiff himself was not the cause of the accident. There is no dispute that Plaintiff entered the intersection northbound, on a red light, at a high rate of speed on a motorcycle, then veered left across Officer Williamson's path of travel to continue north on the opposite side of the street. (UMF 19-32) It is further undisputed that prior to the accident, Officer Williamson was responding to a radio call for an incident at Regal Plaza, stopped at the intersection at the red light traveling south, checked for traffic before entering the intersection to secure it, turned on his lights and entered the intersection, as Plaintiff speed into the intersection without stopping at the red light and suddenly veered across his path of travel. (*Id.*) There is no evidence that Officer Williamson knew Plaintiff would enter the intersection and then suddenly turn left into oncoming traffic in the westbound lane. Based on undisputed facts, the collision did not become a possibility until Plaintiff sped into the intersection illegally on a red light, without stopping, and veered in front of Officer Williamson's vehicle.

Plaintiff was the unforeseeable and independent origin of the accident since his behavior was unlawful and thus Plaintiff did not act in a "foreseeable or innocent way". Entering the intersection on a motorcycle, at a high rate of speed, on a red light, without stopping, and veering across an intersection into the direction of oncoming traffic are all unforeseeable and not innocent. *See* Cal. Veh. Code § §21453, 21651. Plaintiff fails to address, or dispute, these facts and fails to establish Officer Williamson is the cause of the accident or Plaintiff's injuries.

### C. Issue 3: Whether Officer Williamson Is Entitled to Qualified Immunity

#### 1. Defendants' Argument

Qualified immunity shields an official even if the conduct resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540

U.S. 551, 567 (2004) (Kennedy, J., dissenting)). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law… [If] officers of reasonable competence could disagree on th[e] issue [of whether a chosen course of action is constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To overcome the ***presumption of immunity***, "a plaintiff must show that the officer's conduct was so egregious that any reasonable person would have recognized a constitutional violation." *Id*. (quotation omitted).

An officer is entitled to qualified immunity unless the plaintiff raises a genuine issue of fact showing: (1) a violation constitutional right; and (2) that right was "clearly established" at the time of the challenged conduct, such that "every reasonable official" would have understood that what he was doing violates that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011) (citation and internal quotation mark omitted); *Pearson*, 555 U.S. at 232; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001). If the officer did not violate a constitutional right, then he is entitled to immunity. *Hopkins v. Bonvicino,* 573 F.3d 752, 762 (9th Cir. 2009).

If the officer violated such a right, but it was not clearly established, the officer is still entitled to immunity. *Id.* To determine whether a right was clearly established, courts ask whether "it would be clear to a reasonable officer that his conduct was unlawful" given the state of the law when the conduct occurred. *Garcia v. Cty. of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011); *see also Headwaters Forest Defense v. Cty. of Humboldt,* 276 F.3d 1125, 1129 (9th Cir. 2002) (a right is clearly established if a reasonable officer would know that his conduct was unlawful in the situation he confronted). The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

There must be "some parallel or comparable fact pattern to alert an officer that a series of actions would violate an existing constitutional right." *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008). The existing precedent must have placed

the statutory or constitutional question beyond debate. *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).

The Officer Williamson is entitled to qualified immunity as to Plaintiff's 4th Amendment claims because there was no violation of Plaintiff's 4th Amendment rights as stated herein. Even if there were a violation, the Officer Williamson is entitled to qualified immunity because no officer in his position would have believed that his conduct violated clearly established rights, and no existing precedent placed them on notice.

For example, no officer in Officer Williamson's position would have believed that driving his police vehicle into an intersection to clear it would constitute an unreasonable use of force against a motorcyclist who sped into the intersection without the officer's knowledge. (UMF 22-30.)

Therefore, summary judgment should be granted in favor of Officer Williamson based on qualified immunity as well.

**2. Plaintiff's Response**

Officer Williamson is not entitled to qualified immunity for three reasons: (a) on the facts viewed in Plaintiff's favor, his use of the vehicle violated the Fourth Amendment; and (b) defendants waived their argument that the law was not clearly established by failing to develop an argument in their opening brief; and (c) the law prohibiting the use of a patrol vehicle as an impact weapon against a non-threatening person suspected of a minor offense was clearly established long before February 2025.

**(a) A Jury Could Find That Officer Williamson's Use of Deadly Force Was Unreasonable**

The reasonableness of a seizure, including the use of force, is determined by "'careful[ly] balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*,

471 U.S. 1, 8 (1985)). "[A]ll force, lethal and non-lethal, must be justified by the need for the specific level of force employed." *Bryan v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010). Defendants do not argue that the force, if intentional, was reasonable, and they offer no *Graham* analysis.

The nature and quality of the intrusion here was deadly force, which the Ninth Circuit defines as "any force that 'creates a substantial risk of causing death or serious bodily injury.'" *Sabbe*, 84 F.4th at 821 (quoting *Smith*, 394 F.3d at 706). A moving 6,465-pound SUV with a steel push bumper, turned into a moving e-bike rider, obviously creates a substantial risk of causing serious bodily injury. That risk was actualized when Plaintiff was struck by the push bar and thrown 15 to 20 feet, breaking his leg in two places. (AMF 56-57, 71, 78, 85, 87.) Officer Williamson places his own speed at 5 to 10 miles per hour and "zero" at impact, but Plaintiff estimated the patrol vehicle at about 30 miles per hour entering the intersection and in the high 20s at impact, which is itself a dispute the Court cannot resolve on this motion. (AMF 76-77.) The Department's own policy treats the tactic as potentially deadly force. (AMF 93-94.) Defendants' rebuttal expert agrees that none of the circumstances that would authorize deadly force was present and offers no opinion that any force used here was reasonable. (AMF 98.) The Ninth Circuit classified a stationary patrol car placed across a bicyclist's path as intermediate rather than deadly force precisely because the officer "did not hit Seidner with his moving car," and it distinguished "the cases where officers used their vehicle as 'an impact weapon'" and those involving a blockade that "pulled out in front of the motorcycle seconds before impact." *Seidner*, 39 F.4th at 597-98 (discussing *Buckner v. Kilgore*, 36 F.3d 536, 538-40 (6th Cir. 1994), which held that an officer violates clearly established law "if he pulls his squad car onto a highway with knowledge or reason to know that an approaching motorcyclist will not have time or the ability to stop or otherwise safely avoid collision with the car"). Even if the force were classified as intermediate, it required substantial justification. *Id.* at 599.

Against that intrusion, the governmental interest was minimal. The factors include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, of which the second is "the most important," *Seidner*, 39 F.4th at 599 (internal quotation marks omitted). The call reported a disturbance by juveniles on e-bikes, with no injuries, weapons, or threats, and Plaintiff was not among the riders doing wheelies. (AMF 39, 41-42.) No officer commanded him to stop, no officer pursued him, and he did not know an officer was behind him. (AMF 44, 47-48, 51-52.) His offense at the intersection was entering on a red light, an infraction. The most important factor weighs entirely against the use of force: a 16-year-old on an e-bike posed no immediate threat of serious injury to anyone. *See Seidner*, 39 F.4th at 601 (a jury could conclude that the officer "should have taken additional steps to stop Seidner before using an intermediate level of force given Seidner's minor offense and the lack of any safety risk to de Vries or anyone else").

**(b) Defendants Waived Their Qualified Immunity Defense by Failing to Adequately Develop Their Argument in Their Opening Brief**

Defendants have not properly raised the issue of qualified immunity. They frame their argument entirely on their own version of the facts, and they make no argument that a reasonable officer could have believed it was reasonable to use deadly force against a 16-year-old who had committed no crime and posed no serious threat to anyone. Defendants have therefore waived the defense by failing to develop an argument.

///

///

///

///

**(c) The Law Prohibiting the Use of a Patrol Vehicle as an Impact Weapon Against a Non-Threatening Person Suspected of a Minor Offense Was Clearly Established Long Before February 2025**

Regardless, the law prohibiting the use of a patrol vehicle as an impact weapon against a non-threatening person suspected of a minor offense was clearly established long before February 2025. There need not be a prior case "on all fours prohibiting that particular manifestation of unconstitutional conduct," *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001), and officials can have fair warning that their conduct violates clearly established law "even in novel factual circumstances," *Torres v. City of Madera*, 648 F.3d 1119, 1129 (9th Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). In excessive force cases, the question is whether, "under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and [whether] any mistake to the contrary would have been unreasonable." *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (quoting *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003)).

*Garner* established in 1985 that deadly force may not be used against a fleeing suspect who poses no threat of serious physical harm to the officer or others. 471 U.S. at 11. The Ninth Circuit has acknowledged that an automobile can inflict deadly force. *See Acosta v. City & Cnty. of S.F.*, 83 F.3d 1143, 1146 n.9 (9th Cir. 1996), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001); *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) ("It is indisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon.").

The Ninth Circuit applied these principles to a patrol car in *Seidner*. An officer saw Seidner riding a bicycle at night without a front light, a traffic infraction, pulled ahead of him, activated his overhead lights, stopped, and opened his door to

speak with him; Seidner pedaled past and fled at about 15 miles per hour. 39 F.4th at 595. The officer "accelerated ahead and pulled his car at an angle across the street and stopped," and "[s]econds later" Seidner crashed into the stationary patrol car, dislocating his wrist. *Id.* The Ninth Circuit "easily conclude[d]" that the officer's use of his patrol car to stop Seidner was a seizure, *id.* at 596, classified the stationary roadblock as intermediate force, *id.* at 598, and held that a jury could find it unreasonable because the officer "should have taken additional steps to stop Seidner before using an intermediate level of force given Seidner's minor offense and the lack of any safety risk to de Vries or anyone else." *Id.* at 601. The "most important" *Graham* factor favored Seidner because he "was riding his bicycle on a quiet residential street and there is no evidence that he was posing a risk to de Vries or anyone else." *Id.* at 599.

Every fact that favored the officer in *Seidner* is absent here, and the one fact that *Seidner* treated as the line between intermediate and deadly force is present. The officer in *Seidner* had activated his lights, stopped, and gotten out to speak with Seidner before Seidner fled, and Seidner's flight from a known officer was "a separate legal violation" that increased the governmental interest. *Id.* at 599. Officer Williamson gave no command, began running the red light before activating his lights, and Plaintiff did not know any officer wanted him to stop. (AMF 44, 51, 60-61.) The officer in *Seidner* stopped his car and Seidner rode into it, which is why the court classified the force as intermediate rather than deadly and set aside "the cases where officers used their vehicle as 'an impact weapon'" as "inapposite." *Id.* at 598. Here the patrol vehicle was moving when Officer Williamson turned it toward Plaintiff and struck him. (AMF 71, 73, 76.) If a jury could find the stationary roadblock in *Seidner* unreasonable, a jury could find the moving strike here unreasonable, and *Seidner* had been on the books for more than two and a half years when Officer Williamson entered the intersection. No reasonable officer could have believed he could turn a patrol SUV into the path of a juvenile on an e-bike, on a

disturbance call, without a command to stop and without a threat to anyone.[2]

The Ninth Circuit reached the same conclusion about a moving patrol car in *Saetrum*. There, a deputy was arresting Saetrum on suspicion of dealing marijuana. The patrol car's video showed that the deputy "accelerated slightly when plaintiff exited the white truck, continued to drive toward him, and may have turned slightly toward plaintiff immediately before stopping," and the car struck Saetrum. *Saetrum v. Raney*, No. 1:13-cv-425-WBS, 2015 WL 4730293, at *3 (D. Idaho Aug. 7, 2015), *aff'd in part and rev'd in part sub nom. Saetrum v. Vogt*, 673 F. App'x 688 (9th Cir. 2016). The deputy declared that he "never intended for [his] patrol car to be used as an impact weapon." *Id.* The Ninth Circuit affirmed the denial of qualified immunity on the patrol car claim. It held that evidence that "the patrol car accelerated, turned toward Saetrum and then hit him" was "sufficient for a reasonable jury to infer the contact was intentional," and that, as of February 2013, "[a]ny reasonable officer would have understood using the patrol car as an impact weapon was unconstitutional under the circumstances," because "[c]ases from this and other circuits clearly established that using a car as an impact weapon constituted at least a significant, intermediate level of force," which "required more than 'minimal' justification." 673 F. App'x at 690 (citing *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc), *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1161-62 (9th Cir. 2011), and *Bryan*, 630 F.3d at 825-26). The deputy "presented no justification for hitting Saetrum with the patrol car," so "the patrol car impact violated clearly established law." *Id.*

The facts here match *Saetrum* on every point that mattered there, and differ only in ways that favor Plaintiff. The same sequence appears on the City's video, in

---

[2] *Seidner* granted qualified immunity to the officer in that case because, as of February 2020, no authority clearly established that placing a stationary patrol car in a bicyclist's path was excessive force. 39 F.4th at 601-04. *Seidner* itself, decided in June 2022, supplied that notice more than two years before February 7, 2025.

Plaintiff's testimony, and in Officer Williamson's own testimony: the patrol vehicle began moving as Plaintiff came into view, continued toward him without braking, and turned right into the crosswalk where Plaintiff was before the push bar struck him. (AMF 54, 58, 60, 68-73, 79.) Officer Williamson, like the deputy in *Saetrum*, denies that he intended the contact, and a jury "would not be required to credit [his] testimony to the contrary." 673 F. App'x at 690. The governmental interest was smaller here. Saetrum was being arrested for dealing marijuana; Plaintiff was a sixteen-year-old riding home, suspected at most of a disturbance on an e-bike, whom no officer had ordered to stop and no officer was pursuing. (AMF 39-45, 47-52.) If a reasonable officer in February 2013 understood that striking a drug suspect with a patrol car during an arrest was unconstitutional without justification, a reasonable officer in February 2025 understood that turning a patrol SUV into a juvenile on an e-bike, on a disturbance call, with no command to stop, was unconstitutional as well. Although *Saetrum* is unpublished, it is citable under Ninth Circuit Rule 36-3(b), and the published authority on which it rests binds this Court.

District courts in this circuit have treated the same conduct the same way. *See Toscano*, 2015 WL 4508582, at *4-*5, *7 (denying summary judgment where the plaintiffs' evidence would allow a reasonable juror to reject the officer's testimony that he accidentally struck a falling bicycle, holding that whether the officer "intentionally bumped the bicycle is for the trier of fact to decide," and denying qualified immunity); *Gonzales v. City of San Jose*, No. 19-cv-08195-NC, 2020 WL 5407993, at *3-*6 (N.D. Cal. Sept. 9, 2020) (denying motion to dismiss excessive force claim against officer who struck a bicyclist head-on with his patrol SUV, holding that the "use of the patrol SUV as a weapon constitutes at least intermediate and potentially deadly force," that the published authority collected in *Saetrum* clearly established the law, and that the officer was not entitled to qualified immunity).

Published authority from other circuits further supports Plaintiff's argument.

The Sixth Circuit affirmed the denial of qualified immunity to a deputy who rammed a motorcycle with his cruiser, holding that "intentionally ramming a motorcycle with a police cruiser involves the application of potentially deadly force" and that the absence of a prior case on point did not matter. *Walker v. Davis*, 649 F.3d 502, 503-04 (6th Cir. 2011); *see also Stamm v. Miller*, 657 F. App'x 492, 496 (6th Cir. 2016) ("it is clearly established law that an officer may not use his police vehicle to intentionally hit a motorcycle unless the suspect on the motorcycle poses a threat to the officer or others"); *Donovan v. City of Milwaukee*, 17 F.3d 944, 949-50 (7th Cir. 1994) (intentionally striking a motorcycle with a patrol car was "an application of deadly force"); *Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1995) ("an attempt to hit an individual with a moving squad car is an attempt to apprehend by use of deadly force").

Finally, Officer Williamson's own training confirms the point. Training from an officer's own department that alerts him to the risk of serious injury or death from a specific tactic is "fair warning" that the force is unreasonable in those circumstances. *Drummond*, 343 F.3d at 1061-62. Policy 307 states that intentionally placing an emergency vehicle in a rider's path is a roadblock, that the Department does not approve the tactic, and that intervention tactics "may be construed to be a use of force, including deadly force," with roadblocks and ramming alike permitted "only under circumstances when deadly force would be authorized." (AMF 91, 93-95.)

For all the reasons above, qualified immunity should be denied.

**3. Defendants' Reply**

Plaintiff's opposition fails to acknowledge that there is a presumption of qualified immunity for Officer Williamson, relies on an assumption and conclusion that Officer Williamson intended to use his patrol vehicle as a means to detain Plaintiff and force mechanism, and fails to address that the undisputed facts show that there is no seizure and therefore no Fourth Amendment violation – a necessary

element for Plaintiff to defeat qualified immunity.

Plaintiff must raise a genuine issue of fact that shows a violation of a constitutional right. (*Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011). The undisputed facts, as discussed in depth in section IV(A)(3), show that there was no seizure and no Fourth Amendment violation. Plaintiff fails to address Defendants' argument that there is no seizure in opposing qualified immunity, and starts the analysis assuming there is a seizure. Plaintiff argues Officer Williamson used deadly force and it was unreasonable without addressing all of the undisputed facts showing Officer Williamson did not intentionally collide with Plaintiff.

The crucial problem with Plaintiff's argument and ignoring the facts showing Officer Williamson's lack of intent to use his vehicle to collide with Plaintiff, is that based on Plaintiff's analysis and application to the undisputed material facts in this case, anytime an officer's vehicle collides with a person on an e-motorcycle or e-bike (regardless of the officer's intent or the person's actions leading up to the collision), it will be considered an unreasonable use of deadly force, which is not supported by caselaw. Even the caselaw relied upon by Plaintiff is distinguishable in that they discuss when an officer intends to use the vehicle as "an impact weapon," where the officer, for example, "pulled out in front of the motorcycle seconds before impact." There are no such facts in this case showing that Officer Williamson entered the intersection intending to collide with Plaintiff, knew the Plaintiff would be in the intersection before entering the intersection, anticipated Plaintiff would suddenly veer to the west going 20-35 mph and across the Officer's path of travel, or that Officer Williamson intended to stop Plaintiff at any time. Plaintiff's argument that Defendants have waived qualified immunity "failing to adequately develop their argument" is misleading and misconstrues Defendant's arguments. Plaintiff is correct that Defendants are not arguing that a reasonable officer would believe it was reasonable to use deadly force against a suspect who did not posed an imminent threat.  However, Defendants are not making this argument because those

are not the facts of this case. The undisputed facts show that the collision was an unintended, and the result of Plaintiff entering the intersection on a red, going 20-35 mph, and, while traveling at an unsafe speed through a red light, veered across the Officer's path of travel, and which caused the Officer to turn right to attempt to avoid collision. (UMF 19-32.) Based on the facts of this case, there is was no controlling authority at the time such that "every reasonable official" would have understood that responding to a call for a disturbance, entering an intersection with lights and sirens on, and then turning right, would result in a collision with a suspect that the officer was not pursuing, and did not know would also turn into the same lane, would therefore constitute excessive force under the Fourth Amendment. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011); *Pearson*, 555 U.S. at 232; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Plaintiff's citations to law "prohibiting" use of a patrol vehicle as an impact weapon are irrelevant. As explained above, there is no evidence that Officer Williamson intended to or did use his patrol vehicle as an impact weapon. Further there is no evidence that Officer Williamson intended to collide with Plaintiff (or even stop him). On the other hand, there is evidence of Plaintiff caused the collision by rapidly entering the intersection against a red light, and then unexpectedly turning westbound in front of Officer Williamson.

Therefore, qualified immunity should be granted as Plaintiff's opposition fails to provide any controlling authority at the time known to Officer Williamson that clearly established that he could not take the actions he did that are <u>sufficiently similar</u> to the circumstances herein. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999) (qualified immunity must be granted unless Plaintiff can cite "cases of controlling authority" in this jurisdiction at the time of the incident "which clearly established the rule on which they seek to rely," or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that [their] actions were lawful."); *see also City of Escondido v. Emmons*, 139 S.Ct. 500, 503 (2019) (per

curiam) (qualified immunity applies unless "existing precedent **squarely governs** the specific facts at issue.") (emphasis added); *Ashcroft*, 563 U.S. at 743; *Sharp v. County of Orange*, 871 F.3d 901, 910-11 (9th Cir. 2017) ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful…") (emphasis in original).

Notably, the caselaw relied upon by Plaintiff is also distinguishable.

*Tennessee v. Garner*, 471 U.S. at 11: The Court ruled it was unconstitutional when a police officer shot and killed Garner's son as he fled arrest at the home he was suspected of burglarizing, at night, and while the son was unarmed. The instant case involves a completely different set of facts and unintended collision.

*Acosta v. City and Cnty of S.F.,* 83 F.3d 1143, 1146 n.9: Police officer shot and killed a suspect.

*Seidner v. De Vries,* 39 F.4th 591: The police officer went ahead of the plaintiff and used his vehicle as a roadblock to stop the plaintiff fleeing on his bicycle. The facts of the instant case do not involve any such roadblock used by the officer in *Seidner*, an officer actively pursuing someone and trying to stop them.

*Saetrum v. Raney*, No. 1:13-cv-425-WBS, 2015 WL 4730293, at *3 (D. Idaho Aug. 7, 2015), 673 F. App'x at 690: During the arrest of the plaintiff for dealing marijuana, the defendant officer accelerated, turned toward Saetrum, and drove the patrol car into Saetrum.

Plaintiff fails to create a genuine dispute of material fact as to whether there was a constitutional violation and fails to provide existing precedent which squarely governs the facts at issue, and therefore cannot defeat qualified immunity.

**D. <u>Issue 4: Whether Plaintiff's Battery Claim Survives</u>**

**1. Defendants' Argument**

A plaintiff alleging a battery claim against a law enforcement officer has the burden of proving the officer used unreasonable force. *Edson v. City of Anaheim,* 63

Cal.App.4th 1269 (1998). Under California law, a civil action for assault is based on an unlawful invasion of the right of a person to live without being put in fear of personal harm. *Thing v. La Chusa,* 48 Cal 3d 644 (1989).

For the same reason that Plaintiff's Fourth Amendment excessive force claim fails, his battery and assault claims fail as well.

**2. Plaintiff's Response**

Defendants' battery argument is a single paragraph that rests entirely on their seizure argument: the battery claim fails, they contend, for the same reason the Fourth Amendment claim fails. It survives for the same reasons the Fourth Amendment claim survives. A peace officer commits battery if he intentionally touched the plaintiff or caused him to be touched, used unreasonable force, and thereby caused harm. CACI No. 1305B; *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272-74 (1998). Intentional contact is inferable from the same evidence that supports the seizure, and the reasonableness of the force is judged under the same *Graham* standard. *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1121 n.6 (2004); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013). Defendants never argue that the force was reasonable, so the element *Edson* identifies is not one they have put at issue, and harm and the mechanism of injury are undisputed. (AMF 71, 78, 87.) The City's liability does not depend on a policy or custom: California "has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees," and "denies immunity to police officers who use excessive force in arresting a suspect." *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) (citations omitted); Cal. Gov't Code § 815.2(a). Summary judgment on the Fourth Cause of Action should be denied.

**3. Defendants' Reply**

As explained above, Plaintiff does not create disputes of material facts for this issue, and the undisputed facts show the collision was unintended and unanticipated

because of Plaintiff's actions. The facts do not show an unlawful invasion of Plaintiff's rights, a required element for this cause of action.

### E. Issue 5: Whether Plaintiff's Negligence Claim Survives

#### 1. Defendants' Argument

The elements of a claim for negligent supervision are (1) a legal duty to use reasonable care, (2) breach of that duty, (3) proximate cause, and (4) injury. *See Mulligan v. Nichols*, No. CV1300836RGKVBKX, 2014 WL 12586245, at *3 (C.D. Cal. Jan. 2, 2014), aff'd, 835 F.3d 983 (9th Cir. 2016). Plaintiff's allegation in the complaint does not identify any specific "duty of care" violated by Defendant Officers other than to "prevent harm or injury to others." (Complaint, ¶ 65.) As discussed above, there were no constitutional violations committed by the officers and therefore there was no negligence on the part of the officers.

Plaintiff's negligence claim further fails because Plaintiff cannot prove breach of mandatory duty against the City, causation and damages. *See* Govt. Code §815.6; CACI 400, et. seq. For example, Plaintiff cannot prove that Officer Williamson failed to act with reasonable care, nor that he caused Plaintiff's injuries or damages. (UMF 19-37.)

The undisputed evidence shows that Officer Williamson entered the intersection to clear it for officer and civilian safety. (UMF 22.)

#### 2. Plaintiff's Response

Defendants recite the elements of negligent supervision and argue that Plaintiff cannot prove a breach of mandatory duty under Government Code section 815.6. Plaintiff pleads neither. Plaintiff alleges in the Fifth Cause of Action that Officer Williamson negligently operated his patrol vehicle, including by positioning it in Plaintiff's path and entering the intersection without ensuring it was safe to do so, and that the City is vicariously liable. (Compl. ¶¶ 64, 66, 68.) The duty is the ordinary duty of due care in driving, and whether an emergency driver exercised it is "a question of fact for the jury." *Brummett v. Cnty. of Sacramento*, 21 Cal. 3d 880,

885-87 (1978) (internal quotation marks omitted). The City is liable for its employee's negligent operation of a motor vehicle within the scope of employment. Cal. Gov't Code §§ 815.2(a), 820(a). Defendants' premise that there can be no negligence without a constitutional violation is also wrong: an officer's tactical conduct and decisions preceding a use of force are part of the negligence analysis. *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 626, 639 (2013).

A jury could find a breach on this record. Officer Williamson drove into a signalized intersection against a red light, at night, with traffic approaching on Alamo Street in both directions, and did so before activating his emergency lights. (AMF 60-61, 64-65.) He coasted rather than stopping, because he "didn't deem it ... necessary to brake." (AMF 69-70.) He then turned toward the rider and into the oncoming lanes, rather than away from him or to a stop. (AMF 71-72, 80.) Plaintiff concedes that he entered the intersection on a red light without stopping. (UMF 27-30.) That is comparative fault, which reduces recovery in proportion to fault; it does not entitle Defendants to judgment. *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 812-13, 829 (1975). Summary judgment on the Fifth Cause of Action should be denied.

**3. Defendants' Reply**

Plaintiff argues that Officer Williamson was negligent by positioning his vehicle in Plaintiff's path, but this is simply not supported by undisputed facts of the case. Plaintiff further argues Officer Williamson was negligent when he entered the intersection against a red light, at night, with traffic approaching, coasted, and turned toward a rider. Plaintiff's argument is not based on the facts of the case.

The undisputed evidence shows that Officer Williamson did not position his vehicle in Plaintiff's path. Officer Williamson stopped at the intersection, checked for cross-traffic, entered the intersection to secure it and activated his lights. Plaintiff is the party that entered the intersection on a red without stopping, traveling at a high rate of speed, and suddenly changed direction from northbound traffic into the direction of oncoming traffic and across Officer Williamson's path of travel.

Plaintiff cannot prevail on a negligence claim by ignoring the undisputed facts showing this incident was an unintended collision caused by Plaintiff's sudden, erratic change in direction across the intersection.

### F. <u>Issue 6: Whether Plaintiff's Bane Act Claim Survives</u>

#### 1. Defendants' Argument

"The elements of a Bane Act claim are essentially identical to the elements of a §1983 claim, with the added requirement that the government official had a "specific intent to violate" a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). "An excessive force claim under the Bane Act requires a plaintiff to prove that an officer's use of force was unreasonable and that an officer acted with specific intent to violate an individual's constitutional rights. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1041-44 (9th Cir. 2018). To establish specific intent, "[e]vidence simply showing that an officer's conduct amounts to a constitutional violation under an 'objectively reasonable' standard is insufficient." *Losee v. City of Chico*, 738 F. App'x 398, 401 (9th Cir. 2018) (citing *Reese*, 888 F.3d at 1045); *Hernandez v. City of Huntington Beach* (9th Cir. 2019) 798 F. App'x 85. Instead, Plaintiff must show that [the Officers] "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Sullivan v. City of Buena Park*, No. SACV2001732CJCADSX, 2022 WL 2965656, at *13 (C.D. Cal. Jan. 13, 2022), reconsideration denied, No. SACV2001732CJCADSX, 2022 WL 2965666 (C.D. Cal. Feb. 10, 2022).

As discussed above, the Plaintiff's Bane Act Claim fails because Defendant Wiliamson did not violate Plaintiffs rights. Additionally, assuming arguendo, there was a constitutional violation, Plaintiff's Bane Act claim still fails because there is no evidence that Officer Williamson acted with the required specific intent. (UMF 19-37.)

Further, Plaintiff cannot demonstrate a threatening, intimidating or coercive act by Officer Williamson. *See Shoyoye v. Cty. of Los Angeles*, 203 Cal.App.4th

947, 950 (2012); see *Bender v. Cty. of Los Angeles*, 217 Cal.App.4th 968, 979 (2013).

As against the City, Plaintiff's Bane Act claim fails under a vicarious liability theory for the same reasons that it fails against Officer Williamson.

**2. Plaintiff's Response**

*Reese* answers both of Defendants' Bane Act arguments. Defendants argue that Plaintiff cannot demonstrate a threatening, intimidating, or coercive act separate from the force itself, but the Ninth Circuit held that "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Defendants argue that Plaintiff cannot show specific intent, but *Reese* holds that the officer need not have been "thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.* at 1045 (internal quotation marks omitted).

A jury could find that intent here. Officer Williamson used a tactic that his own Department defines as the intentional placement of an emergency vehicle in a rider's path, does not approve, and classifies as potentially deadly force. He used it against a juvenile suspected of a disturbance, with no command to stop and no pursuit, and he did so by running a red light without his emergency lights and turning into the rider. (AMF 39, 44, 48, 52, 60-61, 71, 91, 93.) On comparable evidence, the court denied summary judgment on a Bane Act claim in *Fortson*, 628 F. Supp. 3d at 993-94. *See also S.T. ex rel. Niblett v. City of Ceres*, 327 F. Supp. 3d 1261, 1283 (E.D. Cal. 2018) (denying summary judgment on Bane Act claim because whether the officers had "a specific intent to violate [the decedent's] right to freedom from unreasonable seizure" was "dependent on the resolution of the genuine dispute of fact which prevent[ed] the grant of summary judgment on the

Fourth Amendment excessive force claim"); *Garcia Martinez v. California*, No. EDCV 20-297 JGB (KKx), 2020 WL 6083444, at *3 (C.D. Cal. June 25, 2020) (denying motion to dismiss Bane Act claim alleging that a CHP officer "intentionally, maliciously, and without justification, rammed his patrol vehicle into" a motorcyclist). The City is vicariously liable. Cal. Gov't Code § 815.2(a). Summary judgment on the Seventh Cause of Action should be denied.

**3. Defendants' Reply**

Plaintiff's arguments in support of the Bane Act are again premised his allegation that Officer Williamson intended to use his vehicle as a force mechanism to detain Plaintiff, for which there is no evidence for the same reasons as stated herein. Plaintiff's entire opposition requires the Court to make inferences that are not based on the evidence but instead would require a series of unsubstantiated leaps based on speculation and supposition, such as for example, Plaintiff's argument that Officer Williamson must have intended to strike Plaintiff with his vehicle simply because Williamson intended to enter the intersection. Plaintiff's inferences are simply insufficient to support a Bane Act claim, which requires a plaintiff to prove that an officer's use of force was unreasonable and that an officer acted with specific intent to violate an individual's constitutional rights. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1041-44 (9th Cir. 2018). Further, Plaintiff offers no evidence to show that Officer Williamson driving his vehicle into the intersection not knowing that Plaintiff would drive towards him and then unexpectedly turn into the same lane was "threatening, intimidating or coercive acts" for the purpose of detaining Plaintiff and using force against him. *See Shoyoye v. Cty. of Los Angeles*, 203 Cal.App.4th 947, 950 (2012); see *Bender v. Cty. of Los Angeles*, 217 Cal.App.4th 968, 979 (2013).

Also, Plaintiff does not dispute the relevant facts and fails to present case law establishing the undisputed facts establish a disregard of Plaintiff's constitutional rights and intent to deprive those rights.

# V. CONCLUSION

## A. Defendants' Brief Conclusion

Summary judgment should be granted in favor of all Defendants on all claims for the reasons stated herein. This incident was an unfortunate unintentional traffic collision caused by Plaintiff rushing to get home on his e-motorcycle, attempting to make a sudden left turn, and colliding with Officer Williamson's patrol vehicle. The undisputed evidence shows that Officer Williamson did not seize Plaintiff in violation of the Fourth Amendment, did not use excessive force against him, nor was he negligent in driving his patrol vehicle into the intersection. There is simply no evidence to support a finding that Officer Williamson intentionally crashed his patrol vehicle into Plaintiff, who he was not pursuing, did not and could not know would turn westbound after entering the intersection, and such a finding would defy not only the evidence, but logic itself.

## B. Plaintiff's Brief Conclusion

Whether Officer Williamson intentionally used his patrol vehicle to stop Plaintiff is a disputed question of material fact. The video shows him enter the intersection as Plaintiff appeared, and he admits that he turned his vehicle to the right, a turn that took it into the crosswalk where Plaintiff was, and Defendants do not argue that the force, if intentional, was reasonable. The motion should be denied as to the First, Fourth, Fifth, and Seventh Causes of Action against Officer Williamson and the City of Simi Valley.

///

///

///

///

///

///

///

Dated: September 24, 2026

LAW OFFICES OF DALE K. GALIPO

By: /s/ Cooper Alison-Mayne
Dale K. Galipo
Cooper Alison-Mayne
Attorneys for Plaintiffs
TANNER NAVAROLI

Dated: September 24, 2026

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Lisa W. Lee
Lisa W. Lee
Natalie F. Price
Attorneys for Defendant
CITY OF SIMI VALLEY

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby certify that the content of this document is acceptable to Cooper Alison-Mayne, counsel for Plaintiff Tanner Navaroli, and that I have obtained Mr. Mayne's authorizations to affix his electronic signature to this document

Dated: September 24, 2026

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Lisa W. Lee
Lisa W. Lee
Natalie F. Price
Attorneys for Defendant
CITY OF SIMI VALLEY